UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARPENTERS' DISTRICT COUNCIL OF ) | | |
| GREATER ST. LOUIS and VICINITY, et al., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. 4:09-CV-1311 CAS | |
| ) | | |
| METRO ACOUSTICS, LLC, ) | | |
| ) | | |
| Defendant. ) | | |

### MEMORANDUM AND ORDER

This closed matter was brought under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. It is currently before the Court on plaintiffs' Motion For a Creditor's Bill in Equity and to Pierce the Corporate Veil. Plaintiffs are a labor organization, several ERISA employee benefit plans, and the trustees and fiduciaries of those plans. Plaintiffs sued defendant Metro Acoustics, LLC ("Metro") for unpaid contributions to the plans required under a collective bargaining agreement. For the following reasons, plaintiffs' motion will be denied.

**Procedural History**

On August 17, 2009, plaintiffs filed suit against Metro in order to collect delinquent contributions, liquidated damages, interest, attorneys' fees, and costs owed pursuant to collective bargaining agreements and under the terms of ERISA, 29 U.S.C. § 1132. The parties entered into a Settlement Agreement and submitted an Agreed Order of Dismissal that was approved by the Court on October 27, 2009. Under that Order, the Court retained jurisdiction for a limited time to enforce the terms of the Settlement Agreement by entering a Stipulation for Entry of Consent Judgment that was executed by the parties and retained by plaintiffs' counsel in the event of a breach

of the Settlement Agreement. Upon application by plaintiffs, the Court entered the Consent Judgment against Metro on June 21, 2010.

Plaintiffs have attempted to collect the judgment by garnishing Metro's bank account, but the garnishment interrogatories and deposition testimony of Michael Queen show the accounts are either overdrawn or closed. Metro has accounts receivable and plaintiffs have garnished those companies, but were unable to collect all of the judgment. By the instant motion, plaintiffs seek to satisfy the remainder of their judgment against Metro from assets of its alleged alter ego, Bi-State Acoustics, LLC.

**Facts**

Metro is a Missouri limited liability corporation that was an acoustical ceiling tile contractor. Metro is owned by Denise Queen and Gary Abel, and did business from Denise Queen's residence address in Wentzville, Missouri. Metro stopped doing business at the beginning of the fourth quarter of 2010. Denise Queen and Gary Abel hired and fired company employees; Gary Abel also procured work for the company. Michael Queen is Denise Queen's husband. Michael Queen does not have any ownership interest in Metro, but was its manager. Michael Queen supervised employees in the field, hired and fired employees, and procured work for the company.

Metro has or had bank accounts at the Bank of Old Monroe, Hannibal National Bank and PNC Bank. Metro holds accounts receivable from four companies in the approximate amount of $50,000, according to Mr. Queen's deposition testimony. Metro owns hand tools and scaffolding worth less than $1000, and did not sell any tools, vehicles or other assets when it stopped doing business. Metro had two employees shortly before it stopped doing business.

On October 15, 2010, Michael Queen formed Bi-State Acoustics, LLC, which is also an acoustical ceiling tile contractor. Michael Queen is the sole owner of Bi-State. Neither Denise

2

Queen nor Gary Abel have any involvement with Bi-State. Bi-State has a bank account at Regions Bank. Bi-State does business from Michael and Denise Queen's residence address in Wentzville, Missouri, as did Metro. Bi-State owns its own tools and has no employees; Mr. Queen performs all of its work. Bi-State has worked for several of Metro's former customers.

**Discussion**

I.

This matter is governed by ERISA, 29 U.S.C. §§ 1132(a)(3)(ii) and 1145, and the LMRA, 29 U.S.C. § 185(a). Jurisdiction and venue are proper in this Court.

Under the LMRA, one business entity is the alter ego of another, and therefore is liable for its obligations, if the two are substantially identical in terms of ownership, management, supervision, business purpose, operations, customers, equipment, facilities and employees. See, e.g., Woodline Motor Freight, Inc. v. N.L.R.B., 843 F.2d 285, 288-89 (8th Cir. 1988). Not all of the outlined factors need be identical. Under ERISA, one business entity is the alter ego of another if the two entities exist independently in form only, and those separate forms are used as a subterfuge to defraud, to justify a wrong, or to mislead or discourage pursuit of legal action. See, e.g., Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997).

Federal courts have "the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law." H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc., 994 F.2d 476, 477 (8th Cir. 1993) (citation omitted). The Eighth Circuit has "recognized the availability of the creditor's bill in equity under Missouri law." Id. The creditor's bill in equity is a long-recognized but infrequently used tool to assist creditors who seek "to enforce the payment of debts out of assets that cannot be reached by traditional means of

3

execution on a judgment established in a suit at law." Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922 (Mo. Ct. App. 1989).

Prerequisites to the issuance of a creditor's bill are the "existence of a judgment, the issuance of an execution against assets of the judgment debtor and a nulla bona return thereon." Id. at 925. The fact that a corporation's alleged alter ego was not itself either a judgment debtor or a party in the original action is irrelevant. H.H. Robertson Co., 994 F.3d at 478. Although a creditor's bill can be brought in a separate equitable action, it is appropriate to bring it by motion in the underlying lawsuit where judgment was originally obtained. Fleming Cos., Inc. v. Rich, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997). "A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of execution." Shockley, 771 S.W.2d at 925 (citing United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979)).

A creditor's bill in equity under Missouri law "enables a judgment creditor to 'trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services.'" H.H. Robertson Co., 994 F.2d at 477 (quoting Shockley, 771 S.W.2d at 925). The Missouri alter ego standard applies to such claims. Id.; see also Mobius Management Sys., Inc. v. West Physician Search, L.L.C., 175 S.W.3d 186, 189 (Mo. Ct. App. 2005).

Missouri law presumes that corporations are separate entities, and courts do not lightly disregard the corporate form to hold one corporation liable for the behavior of another. Mid-Missouri Tel. Co. v. Alma Tel. Co., 18 S.W.3d 578, 582 (Mo. Ct. App. 2000). To pierce the corporate veil under Missouri law and recover from the assets of a corporation's alter ego, three requirements must be met: (1) control, (2) breach of duty, and (3) proximate cause. Mobius Mgmt.,

4

175 S.W.3d at 188-89. A creditor must show that the alter ego has "control" of the entity's finances, policy, and business practices with respect to the transaction at issue. Id. at 188. The creditor must also show a "breach of duty--that this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights" that caused the injury to the plaintiff. Id. at 188-89. "Such [dishonest or unjust] acts include the transfer of property from a debtor corporation to a second corporation when both are controlled by the same person, and the manipulation of assets to avoid creditors." Fleming, 978 F. Supp. at 1303 (citations omitted). This standard is almost identical to the standard applied in ERISA cases. See Greater Kansas City Laborers, 104 F.3d at 1055.

In determining whether one corporation exercised control over another to the extent necessary to pierce the corporate veil, courts look to a number of factors, including the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations. See Operating Eng'rs Local No. 101 Pension Fund v. K.C. Excavating & Grading, Inc., 2002 WL 1492103, at *6 (W.D. Mo. Mar. 11, 2002); see also H.H. Robertson Co. v. V.S. DiCarlo General Contractors, 789 F. Supp. 998, 1000 (E.D. Mo. 1992); Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 774 (Mo. Ct. App. 1994). "Such acts include the transfer of property from a debtor corporation to a second corporation when both are controlled by the same person, and the manipulation of assets to avoid creditors." Fleming, 978 F. Supp. at 1303 (citations omitted).

## II.

Plaintiffs have established the necessary prerequisites to the issuance of a creditor's bill, as they have a judgment against Metro, they issued execution against its assets, and the garnishments were returned with responses an overdrawn account and insufficient assets to satisfy the judgment.

Plaintiffs contend the key occurrence for the establishment of liability in this case is Michael Queen's formation of Bi-State before Metro satisfied its debt to plaintiffs. Pls.' Mem. Supp. at 2-3. The Court finds, however, that plaintiffs have failed to offer substantial evidence to establish any of the three requirements for piercing the corporate veil under Missouri law, or to establish that Bi-State is the alter ego of Metro under the LMRA or ERISA.

First, with respect to the issue of control, plaintiffs have failed to establish relevant factors indicating that Metro controls Bi-State. Significantly, the ownership of defendant Metro is completely different than that of its alleged alter ego, Bi-State. There is no evidence that Metro's owners, Denise Queen and Gary Abel, have any role in Bi-State as owners, officers or employees. Bi-State's owner, Michael Queen, was Metro's manager and is married to Denise Queen, but has no ownership interest in Metro.

Plaintiffs established that Bi-State performs the same type of acoustical ceiling tile contracting work that Metro did, including for at least two of Metro's former customers. Bi-State also operates from the same physical location that Metro did, but the significance of this fact is lessened because each company operated from its owner's residence, i.e., Mr. and Mrs. Queen's home. This evidence of some overlap between the two companies is outweighed by the fact of separate ownership discussed above. In addition, the undisputed evidence with respect to other relevant factors is that Bi-State (1) uses a different bank for its corporate bank account than did Metro, (2) does not employ any of Metro's employees, (3) did not obtain any contracts from Metro,

and (4) did not obtain any equipment or assets from Metro, as Bi-State owns its own tools and Metro still owns tools and scaffolding and holds accounts receivable. There is no evidence of subterfuge, or hiding or transfer of assets.

There is no evidence in the record to show that Metro has any control over, much less dominates, Bi-State with respect to finances, policy or business practices, such that Bi-State has "no separate mind, will, or existence of its own." See Mobius Mgmt., 175 S.W.3d at 188. There is also no evidence that Metro rendered property or services to Bi-State as an empty-shell corporation or that Metro or its owners received and benefitted from such property or services. The facts instead tend to show that Bi-State and Metro are separate corporate entities, and that their corporate forms should be respected as such.

With respect to the second factor for piercing the corporate veil, plaintiffs cannot establish that Metro used its control of Bi-State to breach a duty owed to them, because they have not shown that Metro controls Bi-State. Plaintiffs make the conclusory argument that Michael Queen has used Bi-State to avoid the judgment against Metro, but plaintiffs have not established that Mr. Queen had any duty to satisfy the judgment against Metro, and thus that he breached such a duty. Plaintiffs cite case law authorizing the issuance of creditor's bills in cases involving fraudulent transfers, and where the original debtor exercised complete control over the alter ego and was unable to pay its creditors due to fraud. Pls.' Mem. Supp. at 5. Plaintiffs have not established any facts, however, to bring this case within that legal authority, as there is no evidence of control or fraud.

This facts of this case are distinguishable from the cases on which plaintiffs rely.[1] In Greater St. Louis Construction Laborers Welfare Fund v. Marshall-Long, LLC, 4:04-CV-988 CDP (E.D.

---

[1] The Court notes that plaintiffs state on page 5 of their Memorandum in Support that three of the opinions they cite are attached as exhibits, but no such exhibits were attached to the filing.

Mo. May 8, 2006), Judge Perry concluded the corporate veil should be pierced where, soon after a default judgment was entered against the defendant corporation, its sole owner organized a new corporation as its registered agent and sole organizer. The new corporation was in the same business as the judgment debtor corporation, used the same physical address, and took over its contracts, clients and telephone number. Judge Perry found that the judgment debtor corporation's owner and his wife actively liquidated bank accounts, transferred property, and established the new corporation with the intent to defraud the plaintiffs.[2] Under those circumstances, the three requirements of control, breach of duty and proximate cause were present.

Plaintiffs also cite Greater St. Louis Construction Laborers Welfare Fund v. Sunrise Construction, Inc., 2009 WL 73664 (E.D. Mo. Jan. 8, 2009). In that case, the same persons who were principals of judgment debtor Sunrise Construction dissolved the corporation and formed Diverse Construction Group, which performed the same type of business as Sunrise, before Sunrise satisfied its debt to the plaintiffs. In addition to the evidence that the same persons controlled the two corporations, it was critical to the Court's decision to pierce the corporate veil that the individuals admitted the two companies were the same entity and had the same principals. Id. at *4. In light of those facts, the Court found the requirements for piercing the corporate veil were met. The same cannot be said here.

---

[2] In Marshall-Long, Judge Perry found that although the judgment debtor corporation was solely owned by Mr. Marshall, it was operated by him and his wife, and Mr. and Mrs. Marshall both acted to liquidate accounts, transfer property and establish the new corporation in an attempt to defraud the plaintiffs. Consequently, the Court held that Mr. Marshall, Mrs. Marshall, and the new corporation were jointly and severally liable for the judgment against the debtor corporation. See Marshall-Long, 4:04-CV-988 CDP, slip op. at 4-6. As detailed above, there is no comparable evidence in this case of Mrs. Queen's involvement in Bi-State, or of any attempt to defraud the plaintiffs.

Finally, because there is no evidence of control or breach of duty, plaintiffs cannot show that the formation and operation of Bi-State proximately caused them any injury or loss. For the same reasons, plaintiffs fail to show that the management, supervision, business purpose, operations, customers, equipment, facilities and employees of Bi-State and Metro are substantially identical, as required by the LMRA's alter ego test; or that Bi-State and Metro exist independently in form only, and are used as a subterfuge to defraud, to justify a wrong, or to mislead or discourage pursuit of legal action, as required by ERISA's alter ego test.

**Conclusion**

For the foregoing reasons, plaintiffs have not shown that Bi-State is the alter ego of defendant Metro. Plaintiffs are therefore not entitled to a creditor's bill in equity against Bi-State Acoustics, LLC in order to satisfy their judgment against Metro Acoustics, LLC.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil is **DENIED**. [Doc. 45]

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   6th   day of December, 2011.